**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **Luis D. Ramos,** | ) | **CASE NO. 1:12 CV 132** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| v. | ) | |
| | ) | |
| **R. Gansheimer,** *et al.***,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

*Pro se* Plaintiff Luis Ramos filed this action under 42 U.S.C. § 1983 against Lake Erie Correctional Institution ("LECI") Warden R. Gansheimer, LECI Deputy Warden Ms. Joyce, LECI Sergeant Johnston, and LECI Sergeant Hammon.  In the Complaint, Plaintiff alleges Defendants retaliated against him for filing a grievance and unfairly convicted him of a conduct violation.  He seeks monetary and injunctive relief.

## BACKGROUND

Plaintiff claims LECI has an unwritten policy requiring Latino inmates to speak English in the presence of staff or to reveal the substance of conversation conducted in Spanish to a staff

member when asked to do so. Plaintiff filed a grievance about this policy to Captain Litwiler. He claims Sergeant Johnston learned about the grievance and told him if he continued to write Informal Complaints, he would be "in a lot of trouble." (ECF No. 1 at 2.) He contends the Sergeant told him he could receive additional "perks" if, on the other hand, he agreed to become an informant for the corrections officers. (ECF No. 1 at 2.) Plaintiff claims he declined the offer to become an informant but did not further pursue the grievance because he feared reprisals from corrections officers.

Plaintiff claims Sergeant Johnston conspired with a John Doe staff member to falsely accuse Plaintiff of receiving a cell phone from Inmate Little. Plaintiff was told the transaction was recorded by video surveillance, but Plaintiff continued to deny the charge. He was given a conduct report and was found guilty of the violation by Sergeant Hammon at a Rules Infraction Board hearing.

Plaintiff asserts two causes of action in his Complaint. First, he claims the Defendants retaliated against him for filing the grievance. He also asserts he was denied due process at the Rules Infraction Board hearing. Plaintiff claims Warden Ganshiemer and Deputy Warden Joyce are supervisors and failed to correct the actions of the other Defendants.

**STANDARD OF REVIEW**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a

claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

**DISCUSSION**

**I.  Retaliation**

Plaintiff first asserts the Defendants retaliated against him for filing grievances. To state a *prima facie* case for retaliation prohibited by the First Amendment, Plaintiff must establish that: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

**A.     Protected Conduct**

The first element that Plaintiff must establish for his retaliation claim is that he engaged in conduct protected by the First Amendment. *Id.* at 394–95.  Plaintiff claims the Defendants retaliated against him for filing a grievance about the prison's policy requiring Latino inmates to speak English in the presence of staff members.  Filing a grievance against prison officials is conduct protected by the First Amendment, unless the grievance is frivolous. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000).  Although Plaintiff does not elaborate on the content of the grievance, it appears on the face of the Complaint that his filing of the grievance could be considered protected conduct.

**B.     Adverse Action**

The second element that Plaintiff must establish for his retaliation claim is that the Defendants took an adverse action against him. *Thaddeus–X*, 175 F.3d at 396. An adverse action is one that is " capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir.2002).  Plaintiff

-4-

does not have to show actual deterrence. *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir.2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus–X*, 175 F.3d at 398. While this element is not an overly difficult one for the Plaintiff to meet, the threats or deprivations must be more than *de minimis* to rise to the level of a constitutional violation. *Id.*

Plaintiff alleges two adverse actions. First he claims Sergeant Johnston confronted him about the grievance and told him that if he continued to write grievances, he would be in "a lot of trouble." (ECF No. 1 at 2.) It is plausible that a person of ordinary firmness would be deterred from continuing with the grievance process in light of what Plaintiff perceived to be a threat. Plaintiff also claims he was charged improperly with a conduct violation for possessing a cell phone. Plaintiff denies he committed the offense as charged, which resulted in his placement in disciplinary control and a security increase review. This action also could deter a person of ordinary firmness from filing grievances. Plaintiff satisfies the second element of his retaliation claim with respect to Sergeant Johnston and Sergeant Hammon.

Plaintiff, however, does not allege Warden Gansheimer or Deputy Warden Joyce subjected him to an adverse action. Instead, his claims against these Defendants are based solely on their positions as supervisors at the facility. A supervisor cannot be held liable under § 1983 where the allegation is based upon a mere failure to act. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must actively engage in unconstitutional behavior. *Id.* Liability therefore must lie upon more than a mere right to control employees and cannot rely on simple

-5-

negligence. *Id.* In order for Plaintiff to state a claim for retaliation against the Warden and Deputy Warden, he must allege that they did more than play a passive role in the alleged violations or show mere tacit approval of the other Defendants' actions. *Id.* Plaintiff must show that they actively encouraged or condoned the actions of their employees. *Id.*; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995). Plaintiff does not allege these Defendants took affirmative adverse actions against him. He fails to satisfy the second element of his retaliation claims against Warden Gansheimer and Deputy Warden Joyce.

### C. Motivation for Adverse Action

The third element that Plaintiff must establish for his retaliation claim to survive dismissal is that the adverse action was motivated, at least in part, by his participation in protected conduct. *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir.2005). This element addresses whether the Defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct. *Thaddeus–X*, 175 F.3d at 399. If the prisoner can show that the Defendants' adverse actions were at least partially motivated by the prisoner's protected conduct, then the burden shifts to the Defendants to show that they would have taken the same action even absent such protected conduct. *Id.* at 399.

Plaintiff's allegations suggest a plausible connection between the filing of his grievance and Sergeant Johnston's statement that Plaintiff would be in trouble if he continued to pursue the matter. His retaliation claim against Sergeant Johnston therefore meets the basic pleading requirements of Federal Civil Rule 8 and will proceed in this action.

Plaintiff, however, has not stated facts to suggest a connection between Sergeant Hammon's actions and the filing of his grievance. He contends Sergeant Hammon was a

member of the Rules Infraction Board that found him guilty of the conduct charge. Although Plaintiff alleges in a conclusory manner that the finding was "the result of a contrived scheme in which one or more other [D]efendants, in concert with John/Jane Doe other participated," he does not allege facts to reasonably suggest Sergeant Hammon knew of the grievance he filed or was motivated in whole or in part by the grievance when he found Plaintiff guilty of the conduct violation. (ECF No. 1 at 2.) His retaliation claim against Sergeant Hammon is dismissed.

### II. Due Process

Plaintiff also claims he was denied due process during his conduct violation hearing. The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty, or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id*.

The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision." *Howard v.*

*Grinage*, 82 F.3d 1343, 1349 -1353 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Id*. Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ*., 721 F.2d 550, 563 (6th Cir.1983). Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Howard*, 82 F.3d at 1350. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. *Id*. It serves as a check on official misconduct which infringes on a "fundamental right" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscious," as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349.

### A. Procedural Due Process

Plaintiff claims he was denied due process at his Rules Infraction Board hearing. Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights,

-8-

a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221. A liberty interest is implicated only if the sanction imposes an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483.

Generally, unless the disciplinary action is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found in the case. *Sandin*, 515 U.S. at 484. Where good time credits are at stake, due process requires only that a prisoner receive written notice of the hearing at least twenty-four hours in advance; an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Further, some evidence must exist to support the disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985).

Plaintiff does not provide much information in his Complaint about the disciplinary hearing. He disputes the veracity of the factual allegations in the conduct reports. False accusations of misconduct filed against an inmate, however, do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986); *see also Jackson v. Madery*, Nos. 04-1805, 04-1871, 2005 WL 3077136 (6th Cir. May 30, 2006); *Jackson v. Hamlin*, No. 02-2040, 2003 WL 1194246, at *2 (Mar. 11, 2003); *Munson v. Burson*, No. 98-2075, 2000 WL 377038 at *3 (6th Cir. April 7, 2000). If Plaintiff was not deprived of good time credits or subjected to a significantly long placement in disciplinary or local control, no liberty interest is implicated. If either of these conditions do apply, Plaintiff would have to allege he was denied written notice of the charges in advance of his hearing, and an opportunity to be heard in his defense. There are no allegations of this nature in the Complaint that suggest Plaintiff's procedural due process rights were violated. He has not stated a claim for denial of procedural due process.

### B. Substantive Due Process

Plaintiff also fails to state a claim for denial of substantive due process. Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. *Id*. at 833. The

conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id*.

Plaintiff does not allege a deprivation of a fundamental right not specified in the constitution. A substantive due process claim, therefore, would have to be based conduct on alleged to be so severe that it shocks the conscience. Where a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff alleges the behavior of the Defendants was egregious because the charges were brought against him for filing a grievance. Plaintiff asserted a claim of retaliation under the First Amendment and the Court addressed this allegation. A substantive due process claim would be duplicative of his retaliation claim and must be dismissed.

## **CONCLUSION**

Accordingly, Plaintiff's claims against Warden Ganshiemer, Deputy Warden Joyce, and Sergeant Hammon are dismissed pursuant to 28 U.S.C. §1915(e). His claims against Sergeant Johnston for denial of due process are also dismissed pursuant to §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2] This action shall proceed solely on Plaintiff's retaliation claim against Sergeant

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not
> (continued...)

Johnston. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants**.**

    IT IS SO ORDERED.

                                      /s/ Patricia A. Gaughan
                                      PATRICIA A. GAUGHAN
                                      UNITED STATES DISTRICT JUDGE

Dated: 4/3/12

---

[2](...continued)
        taken in good faith.